UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES CASTLE,

       Petitioner,

vs.                                          CASE NO. 08-11910
                                          HON. MARIANNE O. BATTANI

THOMAS K. BELL,

       Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS AND
## GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner James Castle has filed a pro se petition for the writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Petitioner currently is a state inmate at Chippewa

Correctional Facility in Kincheloe, Michigan. He challenges his state conviction for first-

degree murder. Respondent urges the Court in a responsive pleading to deny relief. The

Court agrees with Respondent that Petitioner's claims do not warrant granting the writ. The

habeas petition therefore will be denied.

**I.    THE FACTS**

**A.  The Trial Testimony**

Petitioner was charged with open murder in Ingham County, Michigan. The charge

arose from the murder of a thirteen-year-old girl. The prosecutor's theory was that

Petitioner was guilty of premeditated murder and murder committed during the commission

of, or attempt to commit, criminal sexual conduct. Petitioner's defense was that the

prosecution failed to prove its case.

The testimony at trial established that the victim was home alone on Olds Avenue in Lansing, Michigan on the afternoon of July 20, 2004. Her brother went to a friend's house about 11:00 a.m. When he returned shortly after 6:00 p.m., the front door of the house was open. He looked in his parents' bedroom and saw the victim lying under some blankets. When he attempted to wake her, he saw blood and ran to a neighbor's house to call 911.

The police arrived, secured the scene, and started their investigation. They found the victim lying face-up in the bedroom. She was not breathing, she did not have a pulse, and she had a large laceration across her neck. She was wearing a white tee shirt, but no pants or underpants. There was no sign of forced entry, and the back door was locked.

The body was transferred to Sparrow Hospital in Lansing, Michigan where an autopsy was performed. The autopsy determined that the victim's death was caused by cuts to her throat and, possibly, stab wounds to her chest. Fingernail clippings were taken and sent to the Michigan State Police for genetic testing. An expert witness testified that the DNA extracted from under the victim's fingernails matched Petitioner on 11 of 13 markers. The same expert witness testified that 99.998 percent of a random sampling of people would be excluded as potential contributors of the sample.

Petitioner became a suspect because witnesses observed an ice-cream truck at the victim's home between 11:30 a.m. and 5:00 p.m. on July 20, 2004. Petitioner drove an ice-cream truck and had been married to the victim's aunt, Diane Purvis. He stopped by the victim's home on a regular basis to ask the children whether they wanted to ride in his truck. The victim's brother testified that Petitioner had been at their home on July 19, 2004,

2

but he did not see Petitioner on July 20.

Detective Jorge Gomez testified that, during an interview with Petitioner, Petitioner was informed that he was a match to the DNA found under the victim's fingernails. Petitioner was unable to provide an explanation.

Kelly Bailey testified that she saw the victim during the weekend before the murder. The victim told her that she did not want to ride the ice cream truck anymore because "Jimmy" made her feel uncomfortable and had made sexual passes at her. On cross-examination, Kelly admitted that she failed to mention Jimmy's name when she talked with detectives about three days after the murder. On re-direct examination, Kelly explained that, on the way home from the police department, she remembered the name of the person that the victim had mentioned to her. She stated that her mother's questions had triggered her memory.

Kelly's mother, Dawn Bailey, testified that she took Kelly to the police department on July 23, 2004. On their way home, Kelly informed her that the subject of her statement to the police was Jimmy, but that she did not provide the police with that name.

Leann Holland was the sexual assault coordinator at Sparrow Hospital. She collected hair samples from Petitioner and was permitted to testify that it is rare to find any physical evidence of penetration of a female victim's labia majora. Ms. Holland identified exhibit #152 as a photograph of female genitalia, and she claimed that a swollen and discolored area in the photograph was suspicious and could be evidence of sexual assault. Ms. Holland admitted on cross-examination by defense counsel that she did not examine the victim in this case and had no contact with her.

James Wilford testified that he was an inmate at the Ingham County Jail and that his

3

criminal history was "pretty extensive." He claimed that he had been housed with Petitioner in July or August of the previous year. On one occasion after Petitioner had talked with his lawyer, Petitioner said that the only evidence against him was some DNA from a fingernail. Petitioner explained to Wilford that he had put his hands in the victim's pants and that he shut her up because she would not stop yelling. He then "lost it" and cut her throat.

Forensic pathologist Laurence Simson testified for the defense that there was no evidence of sexual assault and that the assailant would have had blood on his clothing. Laura Pease testified that she saw Petitioner eating a sandwich in his truck about 5:00 p.m. on July 20, 2004, and that he was his normal self. Petitioner's brother John testified that detectives were waiting for Petitioner when he returned from his route about 8:30 or 9:00 p.m. on July 20. Petitioner looked a little shocked when the detectives approached him.

## B. The Verdict, Sentence, and Appeal

On May 26, 2005, an Ingham County Circuit Court jury found Petitioner guilty of premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and felony murder, MCL 750.316(1)(b). The trial court entered a judgment for one count of open murder and sentenced Petitioner to life in prison without the possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following questions:

I.      Must Defendant's conviction be reversed because the Fifth and Fourteenth Amendments to the United States Constitution prohibit the use of physical restraints visible to the jury minus a special need particular to the case, and did the court find no such special need when it ordered Defendant Castle shackled at trial?

II.     Was Defendant denied due process when the court improperly

admitted testimony that constituted hearsay without a valid exception?

III. Was Dawn Bailey's testimony improperly admitted under MRE 801(D)(1)(B) because the purpose of the testimony was to rehabilitate the testimony of her daughter?

IV. Did the trial court's refusal to allow the Defendant to present evidence of third party guilt constitute a denial of his constitutional right to present a defense?

V. Did the court abuse its discretion when it permitted the late endorsement of one jailhouse informer and, after the prosecutor chose not to call that witness to testify, permitted the endorsement during the third week of trial of a second jailhouse informer?

VI. Did the court abuse its discretion when it permitted a nurse whose only involvement in this case was collecting hair samples from Defendant to testify as an expert witness that lack of sexual penetration or injury is not unusual in a child criminal sexual conduct case and, from viewing a photograph, that an area on the genitalia of [the victim] looked "suspicious"?

On June 7, 2007, the Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion. See People v. Castle, No. 265379, 2007 WL 1651441 (Mich. Ct. App. June 7, 2007).

Petitioner raised the same claims in an application for leave to appeal to the Michigan Supreme Court. On October 29, 2007, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded to review the claims. People v. Castle, 740 N.W.2d 294 (Mich. 2007) (table).

Petitioner filed his habeas corpus petition on May 6, 2008. He raises the same issues that he presented to the state courts.

## II. STANDARD OF REVIEW

According to 28 U.S.C. § 2254, as amended by the Antiterrorist and Effective Death

Penalty Act of 1996 ("AEDPA"), the following standard of review is imposed on federal

courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "clearly established Federal law" in § 2254(d)(1) refers to "the governing

legal principle or principles set forth by the Supreme Court at the time the state court

renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  A federal court

conducting habeas corpus review must look to relevant Supreme Court holdings, as

opposed to dicta, in effect at the time of the relevant state-court decision.  Williams v.

Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set

of materially indistinguishable facts."  Id. at 412-13.  An "unreasonable application" of

clearly established federal law occurs when "the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case."  Id. at 413.  A federal habeas court may not, however,

find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, a habeas petitioner must demonstrate that the state court's application of clearly established federal law to the facts of his case was objectively unreasonable. Id. at 409.

## III.  DISCUSSION

### A.      Visible Restraints

Petitioner's first claim alleges that the trial court denied his right to a fair trial by allowing the jury to see him in shackles throughout his trial. Petitioner claims that, by seeing him in shackles, the jury was unfairly prejudiced against him.

#### 1.  Background

Petitioner's trial began on May 9, 2005, with Petitioner wearing one hand attached to a waist belt. In a pretrial motion hearing, the defense attorney asked that the belt with cuffs be removed. The prosecutor had no objection, and the court's deputy said, "It's your choice, Your Honor." The judge then ordered that the belt remain on for "security purposes," but did not articulate any particular reason. (Tr. May 9, 2005, at 21-22.)

During voir dire, when asked about shackling, one juror stated, "[W]hen I see someone in handcuffs, I just, you know, you assume that he probably did something wrong." (Id. at 69.) The juror was later excused by defense counsel. (Id. at 138.)

During the early portion of the trial, courtroom deputies witnessed Petitioner making various rude gestures toward the prosecutor and toward his own attorney outside the

7

presence of the jury. On a separate record, the deputies testified that they were concerned about Petitioner's lack of respect, but they said they had no security concerns. The trial court said that Petitioner would remain shackled and that it would restrain him further if there was any other inappropriate behavior. (Tr. May 12, 2005, at 555-69.)

On May 13, 2005, jail officials used pepper spray on Petitioner to control his behavior, which included plugging the toilet in the holding area. The trial court stated that, if it received another incident report or notice of inappropriate behavior, it would require Petitioner to be restrained with additional handcuffs and possibly leg irons. (Tr. May 17, 2005, at 1136-39.)

On May 23, 2005, while the trial was still in progress, the United States Supreme Court issued its opinion in Deck v. Missouri, 544 U.S. 622 (2005). The Supreme Court held in Deck that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest' – such as the interest in courtroom security – specific to the defendant on trial." Id. at 624 (quoting Holbrook v. Flynn, 475 U.S. 560, 568-569 (1986)). Petitioner's trial attorney moved for a mistrial based on the new holding, but the trial court found Deck to be distinguishable and denied the motion after concluding that Petitioner posed a special security risk. (Tr. May 24, 2005, at 1402-08.)

One of the jurors subsequently revealed to the trial court that she had read an article about the Deck decision in the Lansing State Journal, but she assured the trial court (in the other jurors' absence) that she did not relate the article in any way to this case. The trial court allowed the juror to remain on the jury, after cautioning the juror not to discuss the

8

matter with the other jurors. (Id. at 1441-47.)

During the trial court's charge to the jury, the court instructed the jurors that "security procedures adopted by the Court during the presentation of cases to jurors is not evidence." The court stated that the "procedures do not reflect any opinion of the Court about the case, the parties to the case, or the nature of the charges." The court also charged the jurors not to pay attention to courtroom procedures during their deliberations. (Tr. May 26, 2005, at 1671-72.)

### 2. The State Court Decisions

Petitioner properly presented his claim, that he was unfairly shacked during trial, to the Michigan Court of Appeals on direct appeal. The Court of Appeals agreed with Petitioner that the record did not support the trial court's decision to shackle him. The Court of Appeals was troubled by the fact that the trial court allowed Petitioner to remain in restraints "for security purposes," yet failed to make any findings or articulate any particular concerns related to Petitioner. The Court of Appeals nevertheless found that reversal was not warranted because, in its opinion, Petitioner's appearance in restraints did not contribute to the jury's verdict.

### 3. Analysis

The Supreme Court "has recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial." Carey v. Musladin, 549 U.S. 70, 72 (2006) (citing Estelle v. Williams, 425 U.S. 501, 503-506 (1976), and Holbrook, 475 U.S. at 560). Use of visible shackles during the guilt or penalty phases of a trial is forbidden under the Constitution "*unless* that use is 'justified by an essential state interest' -

such as the interest in courtroom security - specific to the defendant on trial." Deck, 544
U.S. at 624 (quoting Holbrook, 475 U.S. at 568-69) (emphasis in original).  The principles
expressed in the Supreme Court's cases on physical restraints are a "basic element of the
'due process of law' protected by the Federal Constitution." Id. at 629.  A determination that
restraints are necessary "must be case specific, that is to say, it should reflect particular
concerns, say, special security needs or escape risks, related to the defendant on trial."
Id. at 633.

Throughout trial, Petitioner had one hand cuffed to his chair or to a belt around his
waist.  The Court, however, need not determine whether Petitioner's physical restraint
constituted constitutional error, because the state court clearly found that it did, and the
parties seem to agree. Ruimveld v. Birkett,  404 F.3d 1006, 1012 (6th Cir. 2005).  Because
harmless-error analysis applies to shackling decisions, Deck, 544 U.S. at 635; Lakin v.
Stine, 431 F.3d 959, 963 (6th Cir. 2005), the only question is whether the state court's
finding of harmless error was reasonable.

### 4.  Harmless Error Analysis

In a habeas corpus proceeding, an error is harmless unless the trial error  "'had [a]
substantial and injurious effect or influence in determining the jury's verdict,'"  Brecht v.
Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750,
776 (1946)).  "The state must prove 'beyond a reasonable doubt that the [shackling] error
complained of did not contribute to the verdict obtained.'" Deck, 544 U.S. at 635 (quoting
Chapman v. California, 386 U.S. 18, 24 (1967)).

Here, the evidence against Petitioner was substantial.  As explained by the Court

of Appeals,

> [t]he evidence presented at trial showed that defendant had access
> to the victim's home and had shown a sexual interest in the victim.
> Defendant was identified as the likely donor of foreign DNA found
> under the victim's fingernails; the probability that someone else was
> the donor was .002 percent. Defendant admitted being at the victim's
> home twice on the day of her death and two witnesses saw his truck
> at the victim's home at the approximate time of her death. There was
> also circumstantial evidence that the victim was sexually assaulted.
> And James Wilford testified that defendant admitted killing the victim.

Castle, No. 265379, 2007 WL 1651441, at *2. The Court of Appeals went on to

say:

> Apart from the strong evidence against defendant, there is no
> suggestion in the record, nor does defendant contend, that
> defendant's restraints interfered with his ability to participate in his
> defense. Further, the restraint was minimal, involving alternating
> incapacitation of one hand rather than traditional handcuffs, chains
> or similar shackling that would have had a more prejudicial impact.
> */Also, defense counsel questioned the jurors during voir dire about
> the presence of restraints on the defendant and none of the jurors
> indicated that the restraints would affect their ability to be impartial.
> Additionally, the trial court later instructed the jury that the security
> procedures adopted by the court were not evidence, that the
> procedures did not reflect any opinion of the court or the parties
> about the case or the nature of the charges, and that the security
> procedures should not be considered during deliberations.

Id. at *3.

This Court concludes from the record, as summarized by the state court, that the

alleged shackling error likely did not contribute to the jury's verdict or have a substantial

and injurious effect on the jury's verdict. Therefore, the alleged error was harmless.

Petitioner's right to a fair trial was not violated, and his claim is without merit.

## B. The Right to Present a Defense

In a separate record during trial, Diane Purvis testified that Earl Pease was her father and the victim's step-grandfather. Ms. Purvis claimed that Earl Pease had sexually assaulted her when she was a child and that he was violent toward her brothers. Ms. Purvis claimed that she provided this information to the investigating officers and suggested that they investigate Pease. The trial court determined that Purvis's proposed testimony lacked credibility and that Purvis's hatred of Pease rendered her biased. The court then ruled that Ms. Purvis's testimony was inadmissible because it was more prejudicial than probative. (Tr. May 24, 2005, at 1417-40.)

Petitioner claims that the trial court abused its discretion and deprived him of his right to present a defense when it refused to allow him to present Diane Purvis as a witness. Petitioner claims that the evidence was crucial to his defense because it pointed to Mr. Pease as a potentially guilty party.

> The Michigan Court of Appeals addressed this issue, stating that Purvis's
>
> testimony concerned a remote event and lacked a sufficient connection with the crime at issue to warrant admission. In other words, while Purvis's testimony tended to cast suspicion upon Pease, it did not provide any substantive facts specifically connecting Pease to this crime or addressing any material fact at issue in defendant's trial.

Castle, No. 265379, 2007 WL 1651441, at *6. The Court of Appeals concluded that the trial court did not violate Petitioner's right to present a defense because Purvis's testimony "was too remote to be probative." Id.

### 1. Legal Framework

"Few rights are more fundamental than that of an accused to present witnesses in his own defense.   Indeed, this right is an essential attribute of the adversary system itself." Taylor v. Illinois, 484 U.S. 400, 408 (1988) (internal and end citations omitted).  The right to present evidence is not absolute, however.  Montana v. Egelhoff, 518 U.S. 37, 42 (1996). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor, 484 U.S. at 410.  As noted by the Michigan Court of Appeals, the United States Supreme Court restated this principle in Holmes v. South Carolina, 547 U.S. 319 (2006):

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.

Id. at 326-27 (quotation marks and citations omitted).

> "[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial[.]"

Id. at 327 (quoting 40A Am. Jur. 2d Homicide § 286, pp. 136-38 (1999)).  Stated differently, "[e]vidence that tends to prove a person other than the defendant committed a crime is relevant, but there must be evidence that there is a connection between the other perpetrators and the crimes, not mere speculation on the part of the defendant."

DiBenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001) (citing United States v. Patrick, 248 F.3d 11, 21 (1st Cir. 2001)).

### 2. Application

As noted above, on May 24, 2005, in a special hearing held outside the jury's presence, Diane Purvis testified that Earl Pease had sexually assaulted her when she was a child. She believed that the authorities should investigate Mr. Pease because, in her opinion, Pease was capable of violence and an assault on a young female. Ms. Purvis also testified that she had provided this information to the investigating officers, Sergeant Garcia and Detective Gomez. (Tr. May 24, 2005, at 1417-24).

While Ms. Purvis's testimony may have been relevant, it was not reliable evidence. The trial court found her not credible, and the record indicates Purvis was clearly biased against Mr. Pease. She testified, "For the record, I hate the man." Id. at 1429. More importantly, her testimony did not connect Mr. Pease to the crime, and the police eliminated Pease as a suspect after the results of DNA testing became available.

Any argument based on Ms. Purvis's testimony would have been based on the speculation that Mr. Pease was the real killer. As such, the decision of the Michigan Court of Appeals was not contrary to, or an unreasonable application of, Holmes, in which the Supreme Court stated that the Constitution permits judges to exclude evidence that is only marginally relevant or poses an undue risk of prejudice or confusion of the issues. See Wynne v. Renico, 606 F.3d 867, 870-71 (6th Cir. 2010) (finding that the state court's refusal under state evidentiary rules to admit propensity evidence designed to show that someone else committed the murder with which the petitioner was charged did not violate the

14

petitioner's right to present a defense); <u>Miller v. Brunsman</u>, 599 F.3d 517, 524-26 (6th Cir. 2010) (concluding that the state court's exclusion of evidence was not an unreasonable application of clearly established federal law where the evidence proffered by the petitioner did not show a sufficient nexus between the third party and the murder in question). Thus, Petitioner's claim is without merit.

Even if the trial court's decision to exclude Ms. Purvis's testimony violated Petitioner's right to present a defense, the error could not have had a substantial and injurious effect on the jury's verdict. Petitioner was linked to the crime through DNA evidence, which was found under the victim's fingernails, and jailhouse informant James Wilford testified that Petitioner made incriminating admissions to him. In light of this evidence and all the other evidence admitted against Petitioner, the alleged constitutional error was harmless, and Petitioner is not entitled to habeas relief on this claim.

### C.     The Evidentiary Claims

In claims II, III, V, and VI, Petitioner raises issues based on a Michigan statute or on the Michigan Rules of Evidence. In claim II, Petitioner argues that the trial court improperly admitted the deceased victim's statements to prosecution witness Kelly Bailey under exceptions to the hearsay rule found in Michigan Rules of Evidence 803(3) and 804(7). In claim III, Petitioner asserts that Dawn Bailey's testimony, which supported Kelly Bailey's prior consistent statement, was improperly admitted under Michigan Rule of Evidence 801(d)(1)(B) because there was no charge of fabrication and, even if there were, the prior statement was made after the motive to fabricate arose. In claim V, Petitioner alleges that the endorsement of jailhouse informant James Wilford was improper under Mich. Comp.

Laws § 767a(3) and (4). Finally, in claim VI, Petitioner contends that the trial court's decision to allow nurse LeAnn Holland to testify as an expert witness violated Michigan Rule of Evidence 702. Although Petitioner alleges at the conclusion of claim II.A. that the admission of the victim's statement to Kelly Bailey violated his constitutional right to a fair trial, all his evidentiary claims are fundamentally state law issues.

Violations of state law and procedure that do not infringe on specific federal constitutional protections are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Most claims involving whether evidence is admissible under state law also are not cognizable on habeas review. See Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000). "A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." Cristini v. McKee, 526 F.3d 888, 897 (6th Cir. 2008), cert. denied, __ U.S. __, __, 129 S. Ct. 1991 (2009). For the following reasons, the alleged violations of state law did not result in a fundamental miscarriage of justice or in a violation of the right to due process.

Kelly Bailey's testimony – that the victim said an ice cream truck driver by the name of Jimmy made "sexual passes" at her – was admissible under Michigan Rule of Evidence 804(b)(7), which permits hearsay not specifically covered by any other exception to the hearsay rule if the evidence has equivalent circumstantial guarantees of trustworthiness. Petitioner did not preserve his claim about Dawn Bailey for appellate review, see Castle, 2007 WL 1655141, at *4, and the alleged error was harmless, given the other evidence against Petitioner. As for the late endorsement of jailhouse informant James Wilford,

Petitioner has not shown how the late endorsement prejudiced him. Nor did the decision to allow nurse LeAnn Holland to testify as an expert witness prejudice Petitioner. There was other evidence suggesting that the victim may have been sexually assaulted, and a physician testified that a sexual assault can occur without any injury to the genitalia. The Court concludes for all these reasons that the alleged evidentiary errors did not violate Petitioner's right to due process, nor result in a fundamental miscarriage of justice.

## IV. CONCLUSION

Petitioner has not established that the state appellate court's adjudication of his claims resulted in an unreasonable determination of the facts, was contrary to Supreme Court precedent, or was an unreasonable application of clearly established federal law as determined by the Supreme Court. Accordingly, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

Reasonable jurors could debate the Court's assessment of Petitioner's first and fourth claims regarding physical restraints and the exclusion of Diane Purvis's testimony. Accordingly, a certificate of appealability may issue on those two claims. Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court declines to issue a certificate of appealability on the remaining claims because those issues do not deserve encouragement to proceed further. Petitioner nevertheless may proceed in forma pauperis on appeal without further authorization because he was granted leave to proceed in forma pauperis in the District Court. Fed. R. App. P. 24(a)(3).

s/Marianne O. Battani<br>
HONORABLE MARIANNE O. BATTANI

Dated: September 2, 2010      _UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

       I hereby certify that on the above date a copy of this Opinion and Order was served upon the petitioner, James Castle, and Counsel for the Respondent via ordinary U.S. Mail and/or electronic filing.

<u>s/Bernadette M. Thebolt</u>

Case Manager